**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **No. 14-58** |
| **BRENT M. GUZZARDO** | **SECTION I** |

**ORDER & REASONS**

Before the Court is defendant Brent M. Guzzardo's ("Guzzardo") motion[1] for compassionate release. The government opposes the motion.[2] The government also supplemented[3] its opposition following a Court order. And Guzzardo filed replies[4] to both opposition memoranda. The Court denies the motion for compassionate release for the following reasons.

**I.**

On March 25, 2015, Guzzardo pled guilty to counts three and four of an indictment.[5] Those counts charged him with knowingly and intentionally possessing with the intent to distribute a quantity of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1); 841(b)(1)(C) (count three) and knowingly and intentionally possessing a firearm in furtherance of a drug trafficking crime as set forth in count three, in

---

[1] R. Doc. No. 71. The motion includes a request for "appointment of counsel," which the Court denied in a November 9, 2020 order. R. Doc. No. 73. The Court notes that Guzzardo has litigated this motion comprehensively.
[2] R. Doc. No. 74.
[3] R. Doc. No. 77.
[4] R. Doc. No. 75 (original reply); R. Doc. No. 78 (reply to supplemental response).
[5] R. Doc. No. 33.

violation of 18 U.S.C. § 924(c)(1)(A).[6] Guzzardo was sentenced to a term of imprisonment of forty-six months as to count three and sixty months as to count four, to be served consecutively; Guzzardo was also sentenced to a three-year term of supervised release as to each count, to be served concurrently.[7] Guzzardo is currently incarcerated at FCI Coleman Low ("Coleman Low"); his projected release date is January 8, 2022.[8]

Guzzardo now requests compassionate release pursuant to the First Step Act.[9] Guzzardo argues that his medical conditions, which "place[] him at significantly heightened risk of serious illness and/or death from COVID-19 in the prison environment," constitute extraordinary and compelling reasons for a sentence reduction.[10]

The parties agree that Guzzardo has administratively exhausted his claim.[11] Guzzardo and the government also agree that he suffers from "morbid obesity,"[12] and

---

[6] R. Doc. No. 9.
[7] R. Doc. No. 43. Guzzardo has twice challenged his sentence unsuccessfully. *See* R. Doc. No. 59 (dismissing Guzzardo's § 2255 petition); R. Doc. No. 70 (denying Guzzardo authorization to proceed with a second § 2255 petition).
[8] *Inmate Locator*, BOP, www.bop.gov/inmateloc (last visited February 1, 2021).
[9] R. Doc. No. 71.
[10] *Id.* at 6.
[11] *See* R. Doc. No. 74, at 8 ("[T]he government concedes that Guzzardo has exhausted his administrative remedies.").
[12] R. Doc. No. 71, at 6 (Guzzardo identifying his "hypertension and morbid obesity" and accompanying risks as extraordinary and compelling); R. Doc. No. 74, at 13 ("The defendant has provided medical records from the BOP that show him assessed with morbid obesity as of March 30, 2020."); *id.* at 12 ("The defendant has satisfied his burden" by "demonstrating that the [sic] has a medical condition that definitively entails a greater risk of severe illness under the CDC risk factors and that he is not expected to recover from that condition.").

consequently falls within a group recognized as "high risk" of severe illness by the Centers for Disease Control (CDC) if he contracts COVID-19.[13] Guzzardo makes numerous plausible arguments about the risk of infection at Coleman Low, to which the government responds. However, because the government concedes that, but for the fact of his prior infection and recovery, Guzzardo would have satisfied his burden, the Court will not address these arguments further.

In relevant part, Guzzardo's motion argues that he poses little danger to the community. He claims that "BOP considers [him] a low security risk by housing him in a low security facility."[14] He adds that he "actually qualifies for a 'minimum' security camp facility and would be located there but for BOP's 'management variable,'" and he "has completed a drug education program [as] well as reentry orientation programs to prepare to rejoin society."[15]

Guzzardo also argues that the factors set forth in 18 U.S.C. § 3553(a) "weigh in favor of granting his motion."[16] He explains that he "does not . . . intend to imply in any way that his conviction was not serious" and that "[h]e fully accepts the seriousness of his offenses."[17] However, he explains, "if 'serious crimes' were the bar to granting compassionate relief, 'almost no one would be eligible' because 'almost *all* federal prisoners have committed serious crimes.'"[18] He adds that "[o]ther courts

---

[13] *Id.*
[14] R. Doc. No. 71, at 2.
[15] *Id.* (citing BOP records attached to the motion).
[16] *Id.* at 9.
[17] *Id.*
[18] *Id.* (quoting *United States v. Somerville*, 463 F. Supp. 3d 585, 602 (W.D. Pa. 2020)) (emphasis retained from opinion).

have granted compassionate release to prisoners who were convicted of far more heinous crimes" than he was.[19]

While acknowledging that "the seriousness of [his] conviction needs to be taken into account," Guzzardo argues that because he has served the majority of his sentence,[20] "reducing [his] sentence to 'time served' for compassionate release purposes does not invalidate the seriousness of the offense of [sic] the sentence imposed."[21] He concludes that the "93 months incarceration is not a 'slap on the wrist'" and has accomplished the goals of deterring future criminal conduct, aiding his rehabilitation, and protecting the public.[22]

The government's opposition to Guzzardo's motion initially concedes that Guzzardo has "satisfied his burden" to "establish[] extraordinary and compelling circumstances,"[23] but later argues that, while "[t]he government would *normally* concede that a defendant having a medical condition that falls within one of the CDC categories . . . has established an 'extraordinary and compelling' circumstance," the fact Guzzardo has already tested positive for COVID-19 and recovered[24] undermines

---

[19] *Id.* (citing as examples *United States v. McCarthy*, 453 F. Supp. 3d 520 (D. Conn. 2020) (defendant convicted of armed bank robbery released to a halfway house prior to inpatient care 26 days before the end of his sentence); *United States v. Vo Duong Tran*, No. 08-197, 2020 U.S. Dist. LEXIS 65414 (C.D. Cal. Apr. 10, 2020) (granting emergency compassionate release motion of defendant convicted of conspiracy to commit Hobbs Act robbery and possession of a machine gun)).

[20] He asserts that, as of September 2020, he had already served more than 93 months of his 106-month sentence. *Id.*

[21] *Id.*

[22] *Id.* at 10.

[23] R. Doc. No. 74, at 12.

[24] The parties agree that Guzzardo contracted COVID-19 at Coleman Low. R. Doc. No. 71, at 2 (Guzzardo); R. Doc. No. 74, at 13 (the government). Guzzardo denies that

the presumption that his medical conditions place him at high risk of serious illness or death.[25] The government proceeds to cite numerous cases where courts have concluded that compassionate release is not warranted where a defendant has recovered from COVID-19 and did not experience serious consequences.

The government concludes that "although the defendant has an underlying condition that falls within the CDC's heighten [sic] risk guidelines, he in fact did not suffer a severe case when he contracted COVID. The BOP appears to have monitored his condition closely, further undermining" Guzzardo's argument that he must be released.[26]

The government's initial opposition offered no argument that the § 3553(a) factors or, indeed, any concern aside from the fact of Guzzardo's prior infection and recovery, weighed against the granting of his motion. In a reply, Guzzardo argued that the Court should treat this failure to brief the issue as a concession that the factors weigh in favor of a reduction.[27]

However, in a Court-ordered response, the government addressed these issues, arguing that Guzzardo has not met his burden under § 3142(g) to demonstrate that

---

he tested negative before he was removed from isolation and contends that he may still be positive, but acknowledges that he is asymptomatic. R. Doc. No. 71, at 2, 8.

[25] R. Doc. No. 74, at 13 (emphasis added).

[26] *Id.* at 14.

[27] R. Doc. No. 75, at 5 (citing *United States v. Reagan*, 596 F.3d 251, 254–55 (5th Cir. 2010)).

he is not a danger to the community and that the § 3553(a) factors weigh against release.[28]

The government argues that Guzzardo must still be considered a threat to the community in large part because of the nature of his offense and his history as a drug dealer. It explains that "as detailed in the factual basis and the PSR . . . Guzzardo dealt hundred-dollar quantities of methamphetamine, often while in possession of a firearm."[29] It adds that its investigation of Guzzardo was cut short because "agents had to intervene and arrest Guzzardo" when he started sending threatening text messages to a confidential informant, including one that stated: "Well now its your turn brother . . . remember what happen to a snitch."[30] The government also notes that, when Guzzardo was arrested, he was found with a loaded pistol "within easy reach."[31] It concludes that, while Guzzardo did not commit a "'violent offense' like armed bank robbery, distributing methamphetamine while armed with a loaded 357 magnum, especially in the context of making threats to a [confidential informant], is indicative of dangerousness."[32]

---

[28] R. Doc. No. 77, at 2. The government actually argues that the Court must consider a number of factors under § 3142(g). *Id.* This misunderstands the relevant law; the relevant policy statement, discussed *infra*, calls for courts to find that "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2), Policy Statement. But the relevant *factors* are found in § 3553(a), *not* § 3142(g). The Court will not address this argument further—though it notes that some of the arguments relating to factors under that statute are relevant to its § 3553(a) analysis.
[29] R. Doc. No. 77, at 2.
[30] *Id.* at 2–3.
[31] *Id.* at 3.
[32] *Id.* at 3–4.

The government next argues that, largely because of Guzzardo's potential dangerousness, "the § 3553(a) factors, which much [sic] be considered before the Court grants a reduction . . . also disfavor a sentence reduction."[33] "Distribution of methamphetamine, while in possession of a firearm and in the context of making threats" to an informant, the government reiterates, "is a serious offense."[34]

The government concludes that "[t]he sentence that was imposed reflected the seriousness of the offense and provided just punishment," adding[35] that "[t]he Court should not reduce it because of a hypothetical" risk of reinfection.

Guzzardo filed a response to the government's supplemental brief.[36] In relevant part,[37] he attacks the government's argument that his record suggests he is a danger to the community. Relying on the government's acknowledgment that he was distributing "relatively low" quantities of methamphetamine,[38] Guzzardo points

---

[33] *Id.* at 4.
[34] *Id.*
[35] *Id.* Oddly—and seemingly contrary to its own argument that Guzzardo's sentence appropriately reflects his conduct—the government also argues that, while Guzzardo has completed much of his sentence, "he benefitted for [sic] a major break in the form of the government foregoing a potential second 924(c) count that would have vastly increased [his] mandatory sentence as the time of his conviction." *Id.* The Court takes this as an argument that, when considering the § 3553(a) factors, the Court should contemplate not the sentence Guzzardo received, but a longer sentence he could have received had the government pursued it—a sentence that the government concedes could not have been imposed following the First Step Act. *Id.* at 2 n.1. The Court will review the factual basis and the sentence Guzzardo received.
[36] R. Doc. No. 78.
[37] Guzzardo's reply also attacks the government's reliance on his history of substance abuse and its argument that the Court should take into account the charges it might have brought against him when considering whether the purpose of his sentence will be thwarted by early release. Because the Court independently rejects both arguments, it will not address Guzzardo's response to them.
[38] *Id.* at 2 (citing R. Doc. No. 77, at 3).

out that courts have released individuals convicted of distributing significantly larger quantities of drugs.[39]

Guzzardo also argues that any concerns about his potential danger to the community are negated by the fact that he will be placed on supervised release upon release from prison.[40] He reiterates his argument that he is scheduled to be released to a halfway house at some point in 2021 and concludes that releasing him now, rather than in a few months, "could be the difference between life and death."[41]

Finally, in the course of reviewing the parties' submissions in support of and opposition to this motion, the Court determined that it would be helpful to have a clearer picture of Guzzardo's disciplinary record (and his record of accomplishments).[42] United States Probation obtained a copy of Guzzardo's Summary Reentry Plan June 2020 Progress Report. The report indicates that Guzzardo has completed a substantial number of educational courses during his period of incarceration and has consistently maintained work assignments.[43] It also indicates that, as of June 2020, he was "being recommended [for a] Residential Reentry Center placement of 271-365 days."[44] However, the report also indicates that Guzzardo had received seven incident reports as of June 2020.[45] Notably, this

---

[39] *Id.* (citing *United States v. Delgado*, 457 F. Supp. 3d 85, 87 (D. Conn. 2020) (ordering compassionate release of defendant convicted of conspiracy to distribute five kilograms or more of cocaine)).
[40] *Id.* at 4.
[41] *Id.* at 4–5.
[42] *See* R. Doc. No. 79.
[43] R. Doc. No. 80, at 1.
[44] *Id.* at 3.
[45] *Id.* at 2.

includes two acts of disruptive conduct in late 2019,[46] more than four years after his initial imprisonment.

II.

Generally, a "court may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). That general rule has some exceptions, which, under the First Step Act, may now be presented to the court upon a defendant's motion.[47] For such a motion to be properly before the court, the defendant must either exhaust all administrative remedies, or thirty days must elapse "from the receipt of [a compassionate release request] by the warden of the defendant's facility, whichever is earlier." *Id.* § 3582(c)(1)(A).

The court "may" grant such a motion if, "after considering the factors set forth in [18 U.S.C. § 3553(a)] to the extent they are applicable," it finds that "extraordinary and compelling reasons warrant such a reduction." *Id.* The court must also conclude, however, that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.*

The most relevant policy statement is found in § 1B1.13 of the U.S. Sentencing Guidelines Manual. The Application Notes to that policy statement, in turn, provide four categories of extraordinary and compelling reasons: "(1) medical conditions, (2) age, (3) family circumstances, and (4) 'other reasons.'" *United States v. Thompson*,

[46] *Id.* at 8.

[47] The First Step Act provided defendants a mechanism to unilaterally move for a sentence reduction; previously, the "Director of the Bureau of Prisons" needed to file the motion. *See* First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5193, 5239.

984 F.3d 431, 433 (5th Cir. 2021) (quoting U.S.S.G. § 1B1.13, Policy Statement, cmt. n.1(A)–(D)) (alterations omitted).

As noted above, the First Step Act provided a new avenue to request compassionate release. Previously, only the Director of the BOP—not defendants on their own—could move for compassionate release. The First Step Act changed that. However, the Sentencing Commission's policy statements have lagged behind. Because these policy statements have not been amended since the enactment of the First Step Act, portions of them now appear to squarely contradict 18 U.S.C. § 3582(c)(1)(A). For example, the policy statement referenced above begins with, "[u]pon a motion by the Director of the Bureau of Prisons"—which implies that the entire statement applies only to such motions (and not those filed by defendants). U.S.S.G. § 1B1.13, Policy Statement; *see also id.* cmt. n.4 ("A reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons . . . ."); *see also United States v. Perdigao,* No. 07-103, 2020 WL 1672322, at *2 (E.D. La. Apr. 2, 2020) (Fallon, J.) (noting the discrepancy). This raises a significant question: whether courts, instead of the BOP exclusively, have discretion to determine which reasons are sufficiently extraordinary and compelling to fall under the policy statement's catch-all, 'other reasons' category. *See United States v. Ruffin*, 978 F.3d 1000, 1006–08 (6th Cir. 2020) (collecting cases and describing the debate). Courts are split on the matter. *See id.*

For its part, the Fifth Circuit has recognized that the policy statement, notwithstanding this discrepancy, should still at least "inform[] [its] analysis."

*Thompson*, 984 F.3d at 433. And as to whether courts (rather than exclusively the BOP) have discretion to find 'other reasons' that are extraordinary and compelling—even if those reasons are not expressly addressed by the policy statement's guidance on (1) medical conditions, (2) age, and (3) family circumstances—the Fifth Circuit has "opt[ed] not to weigh in." *Id.* at 433 n.4.[48]

This Court need not weigh in either. The government has conceded that Guzzardo has established the existence of 'extraordinary and compelling' circumstances but for the fact he has already been infected with COVID-19. The Court will accept that concession. However, even assuming that the government's position regarding his earlier infection is erroneous, the Court cannot find that Guzzardo has established the prerequisites to compassionate release. That is because he has not carried his burden to show that the applicable § 3553(a) factors justify his release—regardless of whether the policy statement's requirements apply.

**A. Exhaustion of Administrative Remedies**

Section 3582, as mentioned above, allows a court to consider a defendant's compassionate-release motion only after the defendant exhausts administrative remedies, or 30 days elapse after the defendant submits a compassionate-release request to the warden. 18 U.S.C. § 3582(c)(1)(A); *see United States v. Franco*, 973

[48] The parties' briefing pre-dates the Fifth Circuit's ruling in *Thompson*. For its part, the government, in a footnote, argues that the policy statement remains binding as to motions brought by individual defendants, but acknowledges that "not all district courts have agreed with its position." *See* R. Doc. No. 74, at 8 n.16.

F.3d 465, 467 (5th Cir. 2020) (holding that the statutory requirement is "*not* jurisdictional but . . . *is* mandatory") (emphasis in original).

As stated, the parties agree that Guzzardo has satisfied the administrative exhaustion requirement.[49] Accordingly, the Court may consider his motion. *See* 18 U.S.C. § 3582(c)(1)(A).

**B. Extraordinary and Compelling Reasons**

Although the policy statements of the Sentencing Commission have not been amended to reflect the statutory changes brought about by the First Step Act, the policy statements are nevertheless instructive to the Court's determination of whether there are "extraordinary and compelling reasons" that warrant a reduction of Guzzardo's sentence. *Thompson*, 984 F.3d at 433. The Sentencing Commission's relevant policy statement provides, in pertinent part, that extraordinary circumstances exist when the defendant suffers from "a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory)" or a "serious physical or medical condition" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13, Policy Statement, cmt. n.1(A).

While the government appears to initially concede that Guzzardo has satisfied this requirement, the Court understands its argument to be that Guzzardo *would* have established that 'extraordinary and compelling reasons' justify his release *but*

[49] *See* R. Doc. No. 74, at 8 (conceding that Guzzardo has satisfied the exhaustion requirement).

*for* the fact of his prior infection with, and apparent recovery from, COVID-19. The Court will treat this as a concession from the government that the implications of Guzzardo's prior COVID-19 infection are the only reason he may have failed to meet his burden.[50]

The Court is unwilling to accept the government's argument that Guzzardo's previous infection precludes compassionate release. As the government concedes, the possibility of "re-contagion [with COVID-19] is still somewhat of an open question."[51] And Guzzardo has presented evidence of documented cases of re-infection, as well as uncertain guidance from global public health organizations.[52]

The government also argues that Guzzardo's recovery from COVID-19 means that he is unlikely to experience serious symptoms if he is re-infected. It explains that the notion that Guzzardo faces serious danger if re-infected "is hard to square with the fact that he had COVID and did not in fact get badly sick."[53] The argument is unsupported by record evidence regarding re-infection; moreover, the Court does not follow the government's logic. An understanding of the relative likelihood of serious symptoms from COVID-19 re-infection is well beyond the Court's ken. Simply put, the government is asking the Court to evaluate the risk of re-infection with

[50] The Court acknowledges that the government might not have made this concession had the motion been briefed after the Fifth Circuit's ruling in *Thompson*. However, the issue is not dispositive and Guzzardo's motion was initially filed on November 5, 2020. Given the nature of Guzzardo's motion and the conditions that brought it about, the Court cannot in good conscience allow another round of briefing to further delay this matter.
[51] R. Doc. No. 74, at 13.
[52] R. Doc. No. 78, at 1–2.
[53] R. Doc. No. 74, at 13.

COVID-19—while acknowledging that the medical community has been unable to do just that. The Court will not do so.

The Court suspects the government may regret its decision to concede the existence of extraordinary and compelling circumstances but for the narrow issue of re-infection. But it is not the Court's role to litigate the government's case. Accordingly, because the government concedes this point, the Court assumes *arguendo* that extraordinary and compelling reasons exist.

**C. Section 3553(a) Factors**

While the Court cannot substitute its litigation strategy for that of the government, it is equally unable to ignore a potential safety issue merely because the government has not clearly articulated it. The Court is required to consider the factors set forth in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A). One of those factors is the "need for the sentence imposed . . . to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(C). With that in mind, the Court *must* conclude that a sentence reduction is inappropriate.

Guzzardo argues that he poses no threat to the public. He claims this is demonstrated by his lack of criminal record and the fact that he is scheduled to be transitioned to a halfway house in the near future. And he notes that other courts have granted compassionate release to defendants convicted of seemingly more 'violent' crimes than his own. As to the government's point that the distribution of illegal drugs is an inherently dangerous business, Guzzardo points out that he was

dealing small quantities—apparently an argument that this is less of a threat to the public.

The Court understands that Guzzardo has no record suggesting he is a hardened criminal. And it appreciates his efforts to better himself while incarcerated—efforts that it hopes will serve him well when he is released in the near future.

But the Court ultimately must confront the conduct that led to Guzzardo's arrest—and his seeming willingness to resort to threats and violence to further his illegal enterprise. Perhaps Guzzardo is right that, in the abstract, dealing relatively small quantities of methamphetamine is less indicative of a propensity for or willingness to commit violence than dealing large quantities of cocaine. Fair enough. But Guzzardo's crime does not exist in the abstract. He regularly possessed a firearm while dealing illegal drugs. And he threatened an informant. This renders the Court's concerns far less speculative than Guzzardo makes them out to be.

And while Guzzardo's prison record is decent, it does include two 'high severity' disruptive conduct findings from late 2019—long after he was initially incarcerated. This concerns the Court because it suggests that he may be incapable of controlling his actions—leaving the Court to wonder what will happen when Guzzardo faces adversity on release.

Section 3553(a) requires the Court to consider, among other things, the potential that releasing Guzzardo might endanger the public. And—try as it might—

the Court simply cannot look past Guzzardo's firearm possession and, particularly, the threats he made.

Finally: The Court understands that this outcome is more than likely to dishearten Mr. Guzzardo. That is understandable, but it is the Court's hope that he understands that this is not a reflection of the futility of his efforts to better himself while incarcerated. Rather, this decision is the outcome of his illegal, threatening conduct.

**III.**

After reviewing the § 3553(a) factors and considering the applicable policy statement by the Sentencing Commission, the Court finds that compassionate release is inappropriate. Accordingly,

**IT IS ORDERED** that Guzzardo's motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) is **DENIED**.

New Orleans, Louisiana, February 2, 2021.

_______________________________________
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**